Anderson J.
delivered the opinion of the court.
This is an action by the owner of a tenement in the city of Richmond against the owner of an adjoining tenement, to recover damages of the defendant for digging in his lot so near the foundation of the plaintiff’s house, and to such a depth, as to cause it to fall. The defendant’s lot, together with the brick dwelling-house thereon, was conveyed to Thomas Richardson, defendant’s grantor, by Joseph Marx and wife, by deed bearing date on the 1st of May 1817, the grantor reserving the right to join the two end walls of said tenement. And the plaintiff’s lot was conveyed to Mary Stevenson, from whom the plaintiff derives title, by the same grantor, by deed bearing date the 8th of July, in the same year, and is described as adjoining the tenement conveyed as aforesaid to defendant, beginning at the northeast corner thereof, and “running thence along the wall of said tenement, north 54 degrees west, 68 feet eight inches to Edward Hallam’s line;” also the privilege of joining the end walls of the brick tenement conveyed to Thomas Richardson as aforesaid, free of any cost, together with all and singular the buildings, ways, easements, hereditaments and appurtenances, &c. There seems to have *86 been no building on the parcel of land reserved by the grantor, and which he soon afterwards conveyed to Mary Stevenson. But the language of his deed to the defendant clearly implies the reservation of a right to build on it, and to join the end walls of the building which he conveyed to the defendant. And the right so by him reserved, he conveyed by his deed to Mary Stevenson; and it is implied that the land was sold and conveyed to her for the purpose of building thereon. A building was erected thereon, but when or by whom it does not appear, which, together with the defendant’s building, was destroyed by the memorable fire which occurred on the 3d of April 1865. The plaintiff afterwards, in 1866, caused another building-to be erected on the same site, laying the foundation wall of her main building jam against the old foundation wall of the defendant’s building, and building one of the walls of her kitchen in the rear of her main building, on the old foundation wall of the defendant’s building.
In the latter part of the year 1871, the defendant intending to rebuild, caused the old foundation wall of his building, contiguous to which the foundation wall of the plaintiff’s main building was laid, to be removed, and the excavation of his cellar to a depth of three feet below his old foundation, which was lower than the foundation of the plaintiff’s building, which the plaintiff alleges caused her main building to fall, and for which she seeks to recover damages of him.
Every person has a natural right, ex jure naturae, to support to his land from the adjacent and subjacent soil. This natural right is incident to land, and the owner is as much entitled to it as he is to the land itself, without any grant by the servient owner, or any act of acquisition on his own part. It is a right there *87 fore which the law annexes to the ownership of land, that he shall have sufficient support for his ground from the subjacent and adjacent soil. The right subjacent support, it is said, was first determined in Humphries v. Brogden, 12 Q. B. 739, 64 Eng. Com. Law R. 739, upon the ground that there were the same reasons for it that there were to maintain the right to lateral support which had been previously determined. Both rest upon the same foundation.
But this natural right to support exists in respect j of land only, and not in respect of buildings; but the I former right remains, though houses are built. Brown v. Robins, 4 Hurl. & Nor. R. 186, 28 L. J. Exch. 250; Stroyan v. Knowles, 6 Hurl. & Nor. R. 454, 30 L. J. Exch. 102. But a right to support for buildings may j be acquired; and when so acquired it is an easement—J which is defined to be “a privilege without profit, which the owner of one tenement has a right to enjoy in respect of that tenement in or over the tenement of another person; by reason whereof the latter is obliged to suffer, or refrain from doing something on his own tenement for the advantage of the former.”- Goddard on Easements, page 2.
An easement for support may be acquired in different modes, but all are reducible to one by grant; which may be express, implied or presumed. When the owner of land acquires the easement of support, it would seem that his natural right of support in respect of the soil is enlarged, so as to embrace the buildings which he may erect on his land, and invests him with the same right of support in respect of his buildings that he has ex jure naturae in respect of the soil.
If the plaintiff' has enjoyed the support of the land or buildings of the defendant for twenty years, to keep up his house, and both parties knew of that sup *88 port, the plaintiff had a right to it as an easement, and the defendant could not withdraw the support without liable in damages for any injury that accrues to the plaintiff thereby. Hide v. Thornborough, 61 Eng. Com. L. R. 250, 255, Parke B.; Goddard on Easements and cases cited, p. 31; Humphries v. Brogden, 64 Eng. Com. L. R., page 739. In such case the grant is presumed.
The grant is implied, in the absence of express stipulations, in every case where the owner of adjoining houses, or of houses and land, severs the property by sale; Ser, in every such case, rights to support are granted by implication by the vendors and purchasers respectively, for the preservation of the buildings belonging to each other. Goddard on Easements, p. 154, and eases cited. Rights of support in such cases are mutually granted and reserved between original owner and first grantee; and the second grantee succeeds to owner’s reserved rights. Richards v. Rose, 9 Welsh., Hurl. & Gor. 218; Gayford v. Nicholls, Idem 702.
In the ease under judgment, the court is of opinion, that the defendant’s grantor, Joseph Marx, when he conveyed a part and parcel of his land to the defendant, with the brick building thereon, reserved the right to build on the parcel which he retained; and the reservation of his right to support to such building when erected, by the land and building which he conveyed to the defendant, must be implied as an easement. And that said right of support, or easement, passed from him by his deed of conveyance to Mary Stevenson, and from her, with the title to the tenement, to its present owner in fee.
The court is also of opinion, that the original grantor, by his reservation in his deed to the defend *89 ant, of the right to join the end walls of the building he conveyed to him, retained the right, which passed with the land to those who derived title from to join his building to the defendant’s by an independent wall alongside the defendant’s building, or to make it a part of his building by joining only his end walls; and that the privilege of joining his building in the mode indicated by the reservation, did not extinguish or impair his implied reservation of support.
The court is also of opinion, that if it be shown that the plaintiff had a building on her lot which was supported by the land and the building of the defendant for twenty years or more, with the knowledge of the defendant, prior to the fire of April 8d, 1865, which destroyed both buildings, a grant of the easement of support will be presumed: and that said easement was not lost or extinguished by the destruction of her building, but adhered to the building which she caused to be erected on its ruins: and that any right of support which she may have derived from the reservation of the deed of conveyance of her grantor to the defendant, express or implied, was not extinguished by the destruction of the old building, but survived and adhered to the new.
"With regard to the instructions given by the court to the jury, the court is of opinion, that the mere fact of the contiguity of buildings imposed an obligation on the owners, to use due care and skill in removing the one building, not to damage the other, even though no right of support has been acquired. Goddard on Easements, p. 33, citing Dodd v. Holme, 1 A. & E. 493. But if the plaintiff was entitled to the support of her building, by the foundation wall and land of the defendant, the defendant could not withdraw the support without being liable in damages for the *90 injury which accrued to the plaintiff thereby. This doctrine has already been announced, and cases cited in support' of it. The first instruction therefore should have been given with the foregoing qualification.
With regard to the second instruction, so far as it implies that though the plaintiff was entitled to the easement of support to her building, it devolved upon her to protect her building, by providing herself other-supports, and that the defendant was not liable if the plaintiff had knowledge of the danger, and could have averted it by prompt action, the court is of opinion it is erroneous.
With regard to the third instruction, it .does not seem to have been settled, whether the defective construction of the plaintiff’s building with defective materials, upon a defective foundation, which would increase its liabity to fall, should affect the plaintiff’s right of recovery, or relieve the defendant from liability in damages. It is argued on the one hand, that the plaintiff’s building, although defective in its construction, would not have fallen or been impaired, but might have stood a great while, but for the act of the defendant in removing its supports. On the other hand it is contended, that it would be unreasonable and unjust to allow the dominant tenant to deprive the serVient of the privilege of improving his own property, and enjoying the benefit of it, by erecting a building upon her lot, so defective in its construction, or in materials, or in its foundation, that the servient tenant cannot with all due care and proper precaution improve his own property without incurring the liability of paying for his neighbor’s. Eespectable courts and able judges have decided the question differently. One side must have erred, and neither perhaps have placed it upon the true ground. The *91 court is of opinion, that whilst the fact3 supposed should not constitute a bar to the plaintiff’s reeovery, so as to defeat her action, they would he per to be considered by the jury upon the question of damages; and that so far as the instruction gives them an effect to defeat the plaintiff’s right of recovery, it is erroneous. The court is of opinion, that the remainder of the instruction is erroneous, the first clause of it because inconsistent with principles already enunciated; and the last clause, because if the plaintiff wrongfully erected her kitchen wall, upon the defendant’s wall, in relation to which the court does •not intend to indicate an opinion, it would be virtually to set off the defendant’s aggression by the plaintiff’s trespass.
With regard to the fourth and last instruction given by the court:
The material part of this instruction is, that if the defendant contracted with an experienced and competent excavator, of good standing in his business, to do the work, he is not liable in damages for any injury which the plaintiff sustained by his negligent and unskillful execution of it. The instruction is evidently designed to rest upon the distinction between execution of work by an independent contractor, and an agent or servant. Without attempting to 'draw the line of distinction, which is not always well defined, between the two descriptions of contract, it is sufficient to say, that the instruction is objectionable, in so far as it decides for the jury, that the contract was of the former description. Whether the work was done by’ an independent and responsible contractor, or by an agent or servant, in either case it would be by contract. The instruction must be considered in connection with the evidence which was before the *92 jury, and which is certified by the court. That evidence tends to show that the work was not undertaken a contractor,- as contradistinguished from an agent, or servant, or laborer.
There is a class of men whose business it is, to undertake the erection of buildings, or other works for reward. They do not generally propose to do the work in person. They are not always competent. They may be neither bricklayers, masons, nor carpenters, plumbers, nor painters, nor slaters; but they are contractors, and they employ bricklayers, carpenters, &c., to do the work. Or one may be contractor for the brick work, and another for the carpenters’ work, &c., all of whom expect to employ agents and laborers to execute the work. They who undertake to have the work done are contractors, and they who do the work are their servants or agents. Perhaps there the distinction lies, between those who do the work and those who contract to have it done. The defendant might have let out the whole building, excavation, foundation, and superstructure, to a contractor, or he might have let the whole work of building, and reserved to himself the work of excavation and preparation for the foundation; and in that case it would have been just as necessary that he should have an experienced laborer to do the work of excavation as if he had let it to contract. It was no part of the main work which the defendant had in contemplation, the erection of a building on his premises: it was only a preparation for it. And as it was necessary to be done with caution and prudence, as it might endanger his neighbor’s property—and as it was a small job—the work to be done was inconsiderable and inexpensive, but the defendant was interested in having-it done with great •care, and would be therefore inclined to have it done *93 under his own supervision; and we find him contracting directly with the laborer who did the work, and not with one who undertook it as a responsible contractor, to have it done under his own supervision, by his agents or servants. The jury might well be warranted in coming to the conclusion, that the defendant had employed the man who did the work, as his agent or servant to do it for a specified price, and not as a responsible contractor, to have it done through his agents or servants, under his direction and supervision. The fault of the instruction is that it excludes that conclusion, though the jury might think the evidence warrants it.
But another objection fatal to the instruction is, that it ignores the plaintiff’s easement of support, and holds that the defendant would not be liable in damages for any injury to the plaintiff’s building, which was caused by the negligence or unskillfulness of the excavator in removing the supports; which involves the absurdity, that though the defendant was responsible for injury to the plaintiff's building by removing the supports (she being entitled to them), though every care and precaution were used to prevent injury, he would not be liable for the injury if the supports were negligently removed by the excavator whom he employed to remove them. The court is of opinion that this instruction is also erroneous.
It cannot be doubted that it would have been competent for the Circuit court, if in reviewing the instructions which in general are given without much time for reflection or investigation pending the jury trial, it should have been satisfied that he had mistaken the law and misdirected the jury in matters which had a material and important bearing upon the issue, and had most probably influenced its verdict, *94 upon that ground to have set aside the verdict and awarded a new trial, and that it would have been his so to have ruled. But if upon that review the court below should adhere to its first ruling, and hold that the instruction was rightly given, and refuse to set aside the verdict upon that ground, and the rulings of that court should by a bill of exceptions thereto be brought under the review of the appellate tribunal, if the appellate tribunal should be of opinion that the jury had been misdirected, and that its verdict had been probably influenced by the erroneous instruction to the prejudice of the exceptor, and that the court of trial had erred upon that ground in overruling the motion for a new trial, surely it would be competent for the appellate court to reverse the judgment for that cause, and to make such order as ought to have been made by the court below. This conclusion is fortified by the opinion of this court in Bull’s case, 14 Gratt. 613.
The court is therefore of opinion to reverse the judgment of the Circuit court with costs, and to remand the cause for further proceedings to be had therein in conformity with this opinion'.
The court has. expressed no opinion as to the demurrer to the declaration, nor is it necessary to do so now, as the general principles governing the case have been laid down.
There is one defect running through all the counts, that whilst they allege that the common grantor in the conveyance he made to Mary Stevenson of the piece or parcel of his land which he did not convey to the defendant, conveyed the right to join the ends of the defendant’s building, neither of them allege that he reserved to himself the said right or the right of support in his deed of conveyance to the defendant. There are also other defects in the declaration of a *95 more formal character, which the court will not decide are fatal to it upon demurrer; but as the cause will' be remanded for further proceedings, the plaintiff may have leave to amend her declaration if she desires it.